**SO ORDERED.**

**SIGNED this 24 day of December, 2008.**

_____
                            **Randy D. Doub**
                   **United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

**DEN-MARK CONSTRUCTION, INC.,**
**M&D DEVELOPMENT, LLC**
**MARCUS EDWARDS DEVELOPMENT, LLC,**
**DEN-MARK HOMES SC, INC.,**

      **DEBTORS**

**JOINTLY ADMINISTERED**
**UNDER**
**CASE NO. 08-02764-8-RDD**

**DEN-MARK CONSTRUCTION, INC. and**
**DEN-MARK HOMES SC, INC.**

      **Plaintiffs**

      **v.**

**WACHOVIA BANK NATIONAL**
**ASSOCIATION and TRSTE, INC.,**
**as Trustee**

      **Defendants.**

**ADVERSARY PROCEEDING**
**NO. 08-00142-8-RDD**

### MEMORANDUM OPINION AND ORDER
### ALLOWING IN PART AND DENYING IN PART
### <u>MOTIONS FOR SUMMARY JUDGMENT</u>

Pending before this Court is the Plaintiff's Motion for Summary Judgment and the

accompanying Memorandum of Law (collectively, the "Motion") filed by Den-Mark Construction, Inc. ("Denmark") and Den-Mark Homes SC, Inc. ("Denmark SC," collectively with Denmark, the "Plaintiffs") and the Defendant's Opposition Brief to Plaintiffs' Motion for Summary Judgment (the "Opposition") filed by Wachovia Bank, N.A. ("Wachovia") and TRSTE, Inc. ("TRSTE," collectively with Wachovia, the "Defendants"). The Defendants request that the Court consider the Opposition as a cross motion for summary judgment. On November 4, 2008, the Court conducted a hearing on this matter in Wilson, North Carolina.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is proper 'if the pleadings, depositions answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving part. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate.

## DISCUSSION

Based on the pleadings filed in this adversary case, at issue in this proceeding are three sets of loan documents, including deeds of trusts, notes, and deed of trust modifications, recorded in Alamance County, Vance County, and Franklin County. The Debtors allege that the relevant loan documents are part of the public record in each respective county. Wachovia admitted to the existence of the specific loan documents at issue in its Answer filed in this

adversary proceeding.

The Motion sets forth a different theory with respect to each set of loan documents. As such, the Court will review the validity of the loan documents at issue on a county by county basis.

## I. ALAMANCE COUNTY

The Plaintiffs request the Court to enter summary judgment on their first claim for relief pursuant to 11 U. S. C. § 544(a)(l) and to limit the secured portion of a deed of trust and the modification of a deed of trust securing certain properties in Alamance County, North Carolina. The Defendants have also moved for summary judgment with respect to the validity and the amount secured by the deed of trust and its modification recorded in Alamance County. The Defendants request that the Court consider its Opposition as a cross motion for summary judgment.

## **UNDISPUTED FACTS**

1.  On February 15, 2007, Denmark executed a Deed of Trust and Assignment of Rents in favor of Wachovia for certain lots located in the Arbor Creek Subdivision in Alamance County, North Carolina (the "Arbor Creek DOT"). *See Defendants' Exhibit 17.*

2.  The Arbor Creek DOT is properly recorded in the Alamance County Register of Deeds in Book 2532, Page 507 and was recorded on February 20, 2007 at 3:02 P.M.

3.  The Arbor Creek DOT was intended to secure the payment and performance of obligations under the Promissory Note, dated May 24, 2006, between Denmark and Wachovia (the "May 24, 2006 Promissory Note").

4.  On May 21, 2007, the Arbor Creek DOT was modified by a Modification of Deed of

Trust whereby Denmark granted Wachovia a lien on additional properties located in the Arbor Creek Subdivision (the "Arbor Creek Modification DOT"). *See Defendants' Exhibit 19.*

5.     The Modification of Deed of Trust was subsequently recorded on May 22, 2007 at 10:59 A.M. and can be found in Book 2572, Page 895 in the Alamance County Register of Deeds.

6.     The parties further agree that the underlying promissory note at issue in this matter, herein referred to as the May 24, 2006 Promissory Note, was executed on May 24, 2006 by Denmark.

## <u>ANALYSIS</u>

Pursuant to Section 1107(a) of the Bankruptcy Code, a debtor becomes a "debtor-in-possession" upon the filing of the Chapter 11 bankruptcy petition.  A debtor-in-possession has all the rights and powers of the Chapter 11 trustee, including those under 11 U.S.C. § 544(a). 11 U.S.C. § 1107(a); <u>see also</u> *In re Millerburg*, 61 B.R. 125 (Bankr. E.D.N.C. 1986) (recognizing that a debtor-in-possession assumes the position of a hypothetical judgment lien creditor as of the date of the filing of the petition).

Section 544(a)(1) of the Bankruptcy Code provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by (1) a creditor that extends credit to a debtor at the time of the commencement of the case and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

Denmark, as a debtor-in-possession and pursuant to Sections 1107(a) and 544(a)(1) of

the Bankruptcy Code, seeks to avoid a portion of the Defendants' lien and interest in certain real property granted to Wachovia in the Arbor Creek DOT and Arbor Creek Modification DOT to the extent that a judgment lien creditor could do so under non-bankruptcy law.  Denmark argues that Wachovia's lien is limited to the amounts specifically provided for in the future advance clause of the Arbor Creek DOT.

Wachovia, on the other hand, asserts that its lien is valid for the entire balance of the May 24, 2006 Promissory Note and any advances that it made in excess of Ten Million Dollars ($10,000,000.00) so long as those advances do not exceed Twenty Thousand Dollars ($20,000.00).  Furthermore, Wachovia asserts that the amount set forth in the future advance clause of the Arbor Creek DOT does not impact the amount of its lien or its collateral.

In order to determine the relative rights of the parties to a deed of trust, this Court looks to North Carolina law.  *Kirkhard v. Boardwalk Development Company, Inc. (In re Boardwalk Development Co.)*, 72 B.R. 152, n. 3 (Bankr. E.D.N.C. 1987) (<u>citing</u> *Butner v. United States*, 440 U.S. 48 (1979) and *In re Cunningham*, 48 B.R. 509, 512 n.1 (Bankr. M.D. Tenn 1985)).

At the hearing, Wachovia argued that the May 24, 2006 Promissory Note was an equity line of credit agreement subject to the definition provided by N.C.G.S. § 45-81 (2008).[1] Wachovia contends that the Arbor Creek DOT read in conjunction with the May 24, 2006 Promissory Note was in fact a Ten Million Dollar ($10,000,000.00) construction line of credit

---

[1]N.C.G.S. § 45-81(a) defines an equity line of credit as "an agreement between a lender and a borrower for an extension of credit pursuant to which: (1) [a]t any time within a specified period not to exceed 30 years the borrower may request and the lender is obligated to provide...advances up to an agreed aggregate limit; (2)[a]ny repayments...will reduce the amount of advances...; (3) [t]he borrower's obligation to the lender is secured by a mortgage or deed of trust relating to the real property which mortgage or deed of trust **shows on its face** the maximum principal amount which may be secured at any one time and **that it secures an equity line of credit** governed by the provisions of this Article.*Emphasis added.*

5

within the definition of N.C.G.S § 45-81.  Under the "line of credit," Denmark could request a draw from Wachovia based on the line of credit and, in fact, Denmark received certain advancements from Wachovia after February 15, 2007, the date the Arbor Creek DOT was executed.  Wachovia contends that N.C.G.S. § 45-82 (2008)[2] establishes its first priority lien based on the equity line of credit it provided to Denmark.  Furthermore, Wachovia claims that any advances made under the May 24, 2006 Promissory Note, regardless of the amount or timing of the advance is secured to the extent of Ten Million Dollars ($10,000,000.00), the amount of the May 24, 2006 Promissory Note, so long as the balance due  does not exceed the Ten Million Dollars ($10,00,000.00) threshold, plus any advances made up to Twenty Thousand Dollars ($20,000.00).

Denmark disputes Wachovia's claim that the Arbor Creek DOT is an equity line of credit under N.C.G.S. § 45-81(a).  Relying on the language of N.C.G.S. §§ 45-81 to 45-83,[3] Denmark argues that the language of the Arbor Creek DOT is insufficient to establish that the deed of trust is in fact, an equity line.  According to Denmark, the Arbor Creek DOT is clear and unambiguous as to the amount secured at the time the deed of trust was executed and the amount of any potential future advances.  *Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment,* p. 4.  Denmark maintains that the Arbor Creek DOT is a future advance

---

[2] N.C.G.S. § 45-82 provides that a mortgage or deed of trust which **shows on its face that it secures an equity line of credit** shall, from the time of registration, have the same priority to the extent that all advances secured by it as if the advances had been made at the time the deed or mortgage was executed. *Emphasis added.*

[3] *See Footnotes 1 and 2.* N.C.G.S. § 45-83 specifically provides that the future advance statutes set forth in Article 7 of the Mortgage and Deeds of Trust Article of the North Carolina General Statutes do not apply to an equity line of credit or the instrument securing it, if the instrument shows **on its face that it secured an equity line of credit governed by Article 9**. *Emphasis added.*

deed of trust, as set forth in N.C.G.S. §§ 45-68 and 45-70,[4] and that the maximum amount secured by the deed of trust is Twenty Thousand Dollars ($20,000.00).  In contrast to Wachovia's claim that it has a perfected lien of at least Ten Million Dollars ($10,000,000.00), Denmark urges the Court to limit the extent of the secured amount of Wachovia's lien to Twenty Thousand Dollars ($20,000.00) such that Denmark steps into the shoes of a hypothetical judgment lien creditor under 11 U.S.C. § 544(a) to the extent that any equity exists beyond the amount of Wachovia's lien.

In order to determine whether the Arbor Creek DOT is a future advance deed of trust as defined in Article 7 of the North Carolina General Statutes or an equity line of credit under Article 9, the Court must consider the specific language of the Arbor Creek DOT.   The Arbor Creek DOT provides in pertinent part:

### WITNESSETH:

To secure payment and performance of obligations under a Promissory Note (the "Note") dated May 24, 2006, in the amount of ***$10,000,000.00,*** made by Grantor payable to Bank, this Deed of Trust, any present or future Letters of Credit issued by Bank for the account of Grantor, other loan documents as defined in the Note (the "Loan Documents"), and swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), all other indebtedness of Grantor to Bank whenever borrowed or incurred, whether or not reasonably contemplated by the parties hereto as of the date hereof, and any renewals, extensions, novations, or modifications of the foregoing (collectively the "Obligations"), and in consideration of these premises and for other consideration, Grantor does grant and convey unto Trustee, as trustee for Bank and Bank's affiliates in fee simple, all of Grantor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"): (I) all those certain tracts of land in the County of ALAMANCE, State of North Carolina described in

---

[4] N.C.G.S. § 45-68 sets forth that a security interest secures future obligations, subject to the priority provided in N.C.G.S. § 45-70, if the security interest shows that it is given wholly or partly to secure future obligations which may be incurred; shows if the present obligations secured, and the maximum principal amount, including present and future obligations; and shows that the future obligations do not extend beyond 15 years. Section 45-70 provides that any future advances provided in connection with a security instrument that complies with this Article shall have the same priority as if the advances had been made at the time of the instrument's execution.

EXHIBIT A attached hereto and made part hereof (the "Land"); (ii) all buildings and improvements now or hereafter erected on the Land; (iii) all fixtures attached to the Land or any buildings or improvements situated thereon; and (iv) all estates, rights, tenements, hereditaments, privileges, rents, issues, profits easements, and appurtenances of any kind benefitting the Land; all means of access to and from the Land, whether public or private; and all water and mineral rights. *Emphasis added*.

Other relevant language in the Arbor Creek DOT is as follows:

**Future Advances**.  This Deed of Trust is given to secure not only ***existing Obligations***, but also future advances, including obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) made, and future swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) entered into with Bank or any of its affiliates, within 15 years of the date of this Deed of Trust to the same extent as if such future advances and swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) are made on the date of the execution of this Deed of Trust. The principal amount that may be so secured may decrease or increase from time to time, but the total amount so secured at any one time shall not exceed ***$20,000.00***, plus all interest, costs, reimbursements, fees and expenses due under this Deed of Trust and secured hereby.  Grantor shall not execute any document that impairs or otherwise impacts the priority of any existing or future Obligations secured by this Deed of Trust.  The amount of present Obligations secured hereby is ***$10,000.00***.

Nothing herein obligates Bank to provide credit in excess of the Obligations. *Emphasis added*.

The Court disagrees with Wachovia that the Arbor Creek DOT is an equity line of credit.

As a matter of law, North Carolina General Statutes §§  45-81 through 45-83, by their terms

require the subject deed of trust to specifically identify the document as an equity line of credit.

*See fns. 1-3*.  No such specific language appears in this deed of trust. Therefore, the Arbor Creek

DOT is not an equity line of credit automatically entitled to priority as of the date of execution.

The Court finds that the Arbor Creek DOT is a future advance deed of trust[5] as defined by North Carolina General Statute § 45-68. The Arbor Creek DOT specifically provides that it is given wholly or partly to secure future obligations which may be incurred; that the present obligations secured, and the maximum principal amount, including present and future obligations; and that the future obligations do not extend beyond 15 years. Furthermore, GRANT S. NELSON AND DALE A. WHITMAN in *Real Estate Finance Law* define circumstances where future advances occur as where parties "enter into a present mortgage even though some portion of the loan funds is not to be advanced to the mortgagor until some future date. The most common example is a construction loan or other loans to fund improvements to real property, in which the funds are advanced in installments as work progresses and the property becomes more valuable security." GRANT S. NELSON AND DALE A. WHITMAN, *Real Estate Finance Law,* Vol. 2, § 12.7 at p. 268 (5th ed. 2007). This definition clearly describes this transaction with respect to any funds advanced after May 24, 2006, the date of the May 24, 2006 Promissory Note. Consequently, the Arbor Creek DOT is a future advance deed of trust.

At the hearing, the parties spent a significant amount of time addressing the importance of the type of deed of trust executed. However, the determination that the deed of trust at issue is a future advance deed of trust only provides the first step in determining the extent of Wachovia's lien. The Court recognizes that just because the Arbor Creek DOT is not an equity line of credit, it does not automatically mean that the extent of Wachovia's Arbor Creek DOT is

---

[5] Counsel for Wachovia argues that the deed of trust would be valid for Ten Million Dollars ($10,000,000.00) without the future advance clause, and therefore the court should ignore the future advance provision set forth in the deed of trust in its entirety. Wachovia relies on *Eagle Bank v. Community Bank of Trenton (In re Zurliene),* 97 B.R. 460 (Bankr. S. D. Ill. 1989) to support its argument. However, the mortgage involved in *Zurliene* did not contain a future advance provision or clause stating that the mortgage was given to secure future advances. *Id.* at 467. Therefore, the facts of the *Zurliene* case are distinguishable from those presented here.

not limited.  The language of the Arbor Creek DOT needs to be reviewed as a complete document.

In their written pleadings, the parties limit their discussions to specific provisions within the Arbor Creek DOT.  In making its argument to limit the amount of the lien, Denmark relies solely on the Future Advance provision focusing specifically on the section providing that the "principal amount that may be so secured may decrease or increase from time to time, but the total amount so secured at any one time shall not exceed $20,000.00" plus other related costs.

Wachovia, on the other hand, relies on the **WITNESSETH** section which sets forth that the underlying obligation in the May 24, 2006 Promissory Note is Ten Million Dollars ($10,000,000.00).  Wachovia further argues that since no funds were advanced in excess of the Ten Million Dollars ($10,000,000.00) identified in the May 24, 2006 Promissory Note, none of the advances are future advances. *See Opposition*, p.6.  Consequently, Wachovia claims its lien is perfected up to Ten Million Dollars ($10,000,000.00).

However, the parties fail to look at all the specific language in the Arbor Creek DOT as a whole.  In looking at the transaction as a whole, the issue before the Court is whether this obligation (and the amount of the resulting lien held by Wachovia) was the May 24, 2006 Promissory Note in the principal amount of Ten Million Dollars ($10,000,000.00) or whether the May 24, 2006 Promissory Note was one where some of the loan funds would not be advanced until some future date.  Counsel for Wachovia made clear that advancements were made under the May 24, 2006 Promissory Note at times after May 24, 2006, the date of said note.

The Court's inquiry does not stop there. The Arbor Creek DOT, which is the subject of Denmark's Section 544(a)(1) attack, is not dated until February 15, 2007, approximately nine (9)

months after the execution of the May 24, 2006 Promissory Note.

As set forth above, the future advance paragraph states that the deed of trust is given to secure not only *existing obligations* but also future advances. *Existing obligations* would be those amounts due to Wachovia, under the May 24, 2006 Promissory Note, up to Ten Million Dollars ($10,000,000.00) that were advanced prior to February 25, 2007, the date of the Arbor Creek DOT. More specifically, the Court finds existing obligations under this security instrument are those amounts advanced between May 26, 2006 and February 15, 2007 pursuant to the terms of the May 24, 2006 Promissory Note. The Arbor Creek DOT thereby secures the outstanding amount due under the May 24, 2006 Promissory Note as of February 15, 2007 and Wachovia's lien is secured to that extent.

Amounts drawn by Denmark after February 15, 2007 are future advances subject to the provisions of N.C.G.S. § 45-68 and these sums, if any, would be subject to the limitations in the future advance provision set forth in the Arbor Creek DOT. Future advances made after February 15, 2007, may not exceed Twenty Thousand Dollars ($20,000.00). Furthermore, the amount of any present obligation for any advance on or after February 15, 2007 is limited to Ten Thousand Dollars ($10,000.00). These amounts differ from the existing obligation, which is the amount due on the May 24, 2006 Promissory Note as of February 15, 2007.

Contract interpretation in North Carolina must favor an interpretation of a contract that gives meaning to every clause over an interpretation that does not. *Mattox v. Colonial Life and Accident Ins. Co.*, 303 N.C. 648, 280 S.E.2d 907(1981). The language in the deed of trust refers to obligations, present obligations, future advances and existing obligations. Clearly, obligations must refer to provisions and terms other than just the amount owed, which would include

11

payment of taxes, insurance and keeping the property in good condition. There is clearly a distinction between present obligations and existing obligations. Obligations are the cumulative of all obligations, which would include *existing obligations* - the balance due under the May 24, 2006 Promissory Note on February 15, 2007; and present obligations - which would be the draw or advances made on or after February 15, 2007, which could not exceed Ten Thousand Dollars ($10,000.00) per draw or advance. The total allowed future advances provided to Denmark after February 15, 2007 cannot exceed Twenty Thousand Dollars ($20,000.00). If such advances exceed Twenty Thousand Dollars ($20,000.00), then those amounts are avoided pursuant to Section 544(a)(1) of the Bankruptcy Code. If Wachovia made future advances subsequent to February 15, 2007 in excess of Twenty Thousand Dollars ($20,000.00) that were not subsequently paid down by Denmark, Wachovia's lien is secured with respect to those future advances only to the extent of Twenty Thousand Dollars ($20,000.00).

Counsel for Denmark introduced deposition testimony of an officer of Wachovia, who stated the numerals in the future advance clause should have been Ten Million Dollars ($10,000,000.00) rather than Ten Thousand Dollars ($10,000.00) and Twenty Million Dollars ($20,000,000.00) rather than Twenty Thousand Dollars ($20,000.00). Pursuant to Section 544(a)(1) of the Bankruptcy Code, Denmark, as debtor in possession, assumes the position of the hypothetical judgment lien creditor as of the date of the filing of the petition, and pursuant to federal law has no knowledge of the mistaken figures set forth in the future advances clause and has a hypothetical judgment lien as of the date of the filing of the petition. *In Re Millerburg,* 61 B.R. 125 (Bankr. E.D.N.C. 1986) holds that notice and knowledge are not factors to be considered for purposes of the debtor-in-possession's position as a hypothetical judicial lien creditor under Section 544(a)(1). As such, reformation of the mistaken numerical figures are cut

12

off by the debtor-in-possession as hypothetical judgment lien creditor.  See *In re Law Developers, LLC*, 08-00965-8-JRL (Bankr. E.D.N.C. 2008).[6]

Therefore, partial summary judgment is appropriate in this case.  Wachovia's deed of trust of record in Book 2532, page 507 of the Alamance County Register of Deeds, herein referred to as the Arbor Creek DOT, is secured as to the "existing obligation" which is the payoff amount of the May 24, 2006 Promissory Note, as of February 15, 2007 - the date of the Arbor Creek DOT, plus accrued interest after February 15, 2007 on said payoff amount. The advance, or present obligation, if any, made on or after February 15, 2007 is limited to Ten Thousand Dollars ($10,000.00), plus accrued interest from the date of such advances. Any future advances made after February 15, 2007 are secured to the extent of a maximum amount of Twenty Thousand Dollars ($20,000.00), plus accrued interest from the date of such advances.  A genuine issue of material fact remains as to: (1) the amount of the "existing obligation" due under the May 24, 2006 Promissory Note as of February 15, 2007 and (2) the determination as to whether or not any future advances were made on or after February 15, 2007 and the amount of such advances. These issues of material fact will be set for trial.

## II.  FRANKLIN COUNTY

The Plaintiffs request the Court to enter summary judgment and invalidate certain deeds of trust and any modifications recorded in Franklin County, North Carolina.  The Plaintiffs allege that since a loan agreement, deed of trust, and note modification do not properly identify the underlying deed of trust that the documents intended to modify, note modification and any

---

[6] Had the May 24, 2006 Promissory Note and the Arbor Creek DOT been executed on the same date, the amount of the existing obligation would have been limited to the Ten Thousand Dollars ($10,000.00) advance which would have equaled the existing obligation.  However, in the case at bar, the Arbor Creek DOT was dated February 15, 2007 while the May 24, 2006 Promissory Note was dated May 24, 2006.

subsequent modifications should be invalidated based on this improper reference.  The

Defendants move for cross-summary judgment in their Opposition asserting that the note

modification is not invalid and if the Court determines that the note modification is, in fact,

invalid, the subsequent modifications recorded in Franklin County, North Carolina are valid.

### UNDISPUTED FACTS

1.      On April 1, 2003, Denmark executed a Loan Agreement, Deed of Trust and Note

Modification Agreement in favor of TRSTE, Inc., as Trustee, for the benefit of Wachovia

(the "April 1, 2003 Modification Agreement"). *See Defendants' Exhibit 4.*

2.      The April 1, 2003 Modification Agreement granted Wachovia a lien with respect to

certain real property located in Franklin County and was subsequently recorded in the

Register of Deeds for Franklin County on April 24, 2003 in Book 1330, Page 206.

3.      The April 1, 2003 Modification Agreement references an instrument recorded in Deed

Book 7177, Page 0212 in the Wake County Registry.

4.      The April 1, 2003 Modification Agreement references a promissory note, dated

November 29, 2000, with an original indebtedness of Two Million Five Hundred

Thousand Dollars ($2,500,000.00) and a deed of trust of an even date recorded in  Book

7177, Page 0212, Wake County Registry.

5.      The instrument recorded in Book 7177, Page 0212 of the Wake County Registry is a

Master Deed of Trust from David Cyrus d/b/a Den-Mark Construction Company in favor

of Signet Bank, dated October 3, 1996, in the amount of One Million Five Hundred

Thousand ($1,500,000.00).  *See Defendants' Exhibit 1.*

6.      Signet Bank was subsequently acquired by Wachovia.

7.      The instrument recorded in Book 7177, Page 0212 of the Wake County Registry is not a

deed of trust from Den-Mark Construction Inc., dated November 29, 2000.

8.     The Loan Agreement, Deed of Trust, and Note Modification Agreement, dated November 5, 2003 and recorded in the Register of Deeds for Franklin County at Book 1373, Page 822, modifies the April 1, 2003 Modification Agreement to increase the principal obligation secured to Five Million Five Hundred Thousand Dollars ($5,500,000.00) (the "November 5, 2003 Monetary Modification Agreement").  *See Defendants' Exhibit 5.*

9.     The Modification of Deed of Trust to Add Property, dated November 5, 2003 and recorded in the Register of Deeds for Franklin County at Book 1373, Page 826, modifies the April 1, 2003 Modification Agreement to grant liens with respect to certain lots in the River's Edge Subdivision (the "November 5, 2003 Collateral Modification Agreement"). *See Defendants' Exhibit 6.*

10.    The Modification of Deed of Trust, dated February 25, 2005 and recorded in the Register of Deeds for Franklin County at Book 1460 Page 896, modifies the November 5, 2003 Monetary Modification Agreement to increase the principal amount due to Ten Million Dollars ($10,000,000.00) (the "Subsequent Monetary Modification").  *See Defendants' Exhibit 7.*

11.    There are an additional series of Deed of Trust Modifications (collectively referred to herein as the "Subsequent Collateral Modifications") including:

A.     The Modification of Deed of Trust, dated December 14, 2005 and recorded in the Register of Deeds for Franklin County at Book 1517, Page 674, modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien with respect to Lot 45 Barham Place Subdivision. *See Defendants' Exhibit 9.*

B.      The Modification of Deed of Trust, dated March 21, 2006 and recorded in the Register of Deeds for Franklin County at Book 1535, Page 563, modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien with respect to certain real property located in the River's Edge Subdivision, including Lot 76. *See Defendants' Exhibit 10.*

C.      The Modification of Deed of Trust, dated May 24, 2006 and recorded in the Register of Deeds for Franklin County at Book 1548, Page 438, modifies the November 5, 2003 Collateral Modification Agreement and increases the Deed of Trust amount to Ten Million Dollars ($10,00,000.00), as well as adds Den-Mark Homes SC, Inc. as an additional Grantor. *See Defendants' Exhibit 12.*

D.      The Modification of Deed of Trust, dated July 6, 2006 and recorded in the Register of Deeds for Franklin County at Book 1556, Page 724, modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien with respect to certain real property located in the Tanager Farms Subdivision, including Lot 33.  *See Defendants' Exhibit 13.*

E.      The Modification of Deed of Trust, dated November 6, 2006 and recorded in the Register of Deeds for Franklin County at Book 1581, Page 825, modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien with respect to certain real property located in the Pigeon Point Subdivision, including Lot 137.  *See Defendants' Exhibit 14.*

F.      The Modification of Deed of Trust, dated December 7, 2006 and recorded in the Register of Deeds for Franklin County at Book 1586, Page 782, modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien

16

with respect to certain real property located in the Glen Oaks Subdivision, including Lot 9.  *See Defendants' Exhibit 15.*

G.      The Modification of Deed of Trust, dated December 7, 2006 and recorded in the Register of Deeds for Franklin County at Book 1586, Page 816, modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien with respect to certain real property located in the Pigeon Point Subdivision, including Lot 128.  *See Defendants' Exhibit 16.*

H.      The Modification of Deed of Trust, dated April 26, 2007 and recorded in the Register of Deeds for Franklin County at Book 1616, Page 430 modifies the November 5, 2003 Collateral Modification Agreement and grants Wachovia a lien with respect to certain real property located in the Tanager Farms Subdivision, including Lot 45.  *See Defendants' Exhibit 18.*

## <u>ANALYSIS</u>

As previously addressed, Section 1107(a) of the Bankruptcy Code provides that a debtor becomes a "debtor-in-possession" upon the filing of the Chapter 11 bankruptcy petition and that the debtor-in-possession has all the rights and powers of the Chapter 11 trustee, including those under 11 U.S.C. § 544(a). 11 U.S.C. § 1107(a); <u>see also</u> *In re Millerburg*, 61 B.R. 125 (Bankr. E.D.N.C. 1986) (recognizing that a debtor-in-possession assumes the position of a lien creditor as of the date of the filing of the petition).

Pursuant to Sections 1107(a) and 544(a)(1), Denmark, as a debtor-in-possession, seeks to avoid any liens created by the April 1, 2003 Modification Agreement based on the undisputed fact that the April 1, 2003 Modification fails to accurately identify the deed of trust evidencing the security interest obtained in connection with the promissory note dated November 29, 2000.

17

Relying on *Beaman v. Head* (*In re Head Grading*), 353 B.R.122 (Bankr. E.D.N.C. 2006), the

Plaintiffs contend that if a deed of trust is required to properly identify the obligation it secures,

then a modification of a deed of trust must properly identify any deed of trust the modification

seeks to change.  The Plaintiffs' contend because the April 1, 2003 Modification Agreement is

invalid, the November 5, 2003 Monetary Modification Agreement and the November 5, 2003

Collateral Modification Agreement are also invalid based on their reference to the April 1, 2003

Modification Agreement.  Furthermore, the Plaintiff's contend because the Subsequent

Modifications reference the instruments that include a reference to an incorrect deed of trust or

modification that contains an incorrect reference, these instruments are also invalid.

The Defendants argue that the rationale of *Head Grading,* to provide "proper clarity and

certainty in lien perfection requirements," is not at issue with the facts presented in this case as

the secured obligation, a note of November 29, 2000 in the amount of Two Million Five

Hundred Thousand Dollars ($2,500,000.00) (the "November 29, 2000 Note"), is properly

identified in the April 1, 2003 Modification Agreement and therefore, properly referenced in the

November 5, 2003 Monetary Modification Agreement and the November 5, 2003 Collateral

Modification Agreement. *Id.* at 124.

The Defendants contend that the Plaintiffs' attempt to extend the holding in *Head*

*Grading* is illogical since the April 1, 2003 Modification Agreement provides the proper date of

the underlying obligation, the correct amount of the obligation, and that a deed of trust of even

date was granted with respect to the obligation.  Even though the book, page, and county

references to the deed of trust are incorrectly described in the April 1, 2003 Modification

Agreement, the Defendants assert that since the correct deed of trust is recorded in the public

records of Franklin County, a title searcher would find it through a Grantor/Grantee Index

18

Search.  Lastly, the Defendants allege that no concerns exist with respect to providing proper notice since deeds of trust are indexed based on grantors/grantees and not pursuant to recital paragraphs of deeds of trusts or other recorded instruments. Consequently, anyone should have been able to locate the proper deed of trust given that the November 29, 2000 Note was correctly described in the April 1, 2003 Modification Agreement. And because the April 1, 2003 Modification Agreement is valid, the November 5, 2003 Monetary Modification Agreement and the November 5, 2003 Collateral Modification Agreements are valid based on their reference to the April 1, 2003 Modification Agreement.  Furthermore, the Plaintiffs' assert that the Subsequent Modifications are also valid since they refer to instruments that properly refer back to an instrument properly describing the underlying obligation.

Given the facts of this case, the Court agrees with the Defendants and declines to extend the holding of *Head Grading* and invalidate instruments where the underlying debt is properly referenced and the deed of trust securing the underlying obligation can be located through a grantor/grantee index.

Although, Denmark does not seek to avoid the November 29, 2000 Note or the November 29, 2000 DOT (hereinafter defined), in order to consider the validity of the April 1, 2003 Modification Agreement, the Court must determine if the November 29, 2000 Note is properly secured.  To do so, the Court looks to see whether the proper deed of trust sufficiently describes the underlying obligation.  *In re Head Grading,* 353 B.R. 122.  The November 29, 2000 Note is secured by a deed of trust dated November 29, 2000 (the "November 29, 2000 DOT").  *See Defendants' Exhibit 2.*  The November 29, 2000 DOT is recorded in the Register of Deeds for Franklin County in Book 1196 at Page 327 and secures the November 29, 2000 Note in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00).  The November

29, 2000 DOT, which is to be modified by the April 1 Modification and Subsequent Modifications, correctly identifies the underlying secured obligation - the November 29, 2000 Note - in accordance with the requirements set forth in *Head Grading*. Consequently, the November 29, 2000 DOT and November 29, 2000 Note are valid and enforceable.

With respect to the avoidance of the April 1, 2003 Modification Agreement, this instrument seeks to increase the principal amount secured from Two Million Five Hundred Thousand Dollars ($2,500,000.00) to Three Million Five Hundred Thousand Dollars ($3,500,000.00). Although this instrument improperly refers to a deed of trust that is recorded in Wake County, the April 1, 2003 Modification Agreement properly identifies the underlying obligation that the deed of trust secures in that it provides the proper date of the note, November 29, 2000, and the proper amount of the note, Two Million Five Hundred Thousand Dollars ($2,500,000.00). Consequently, based on the fact that the November 29, 2000 Note is properly described in accordance with the requirements of *Head Grading*, the Court finds that the April 1, 2003 Modification Agreement is valid and enforceable. 353 B.R. 122.

The Court also finds that the November 5, 2003 Monetary Modification Agreement is valid. The November 5, 2003 Monetary Modification Agreement increases the principal amount of the obligations secured by a deed of trust from Three Million Five Hundred Thousand Dollars ($3,500,000.00) to Five Million Five Hundred Thousand Dollars ($5,500,000.00). On its face, this instrument correctly identifies the document that it modifies, the April 1, 2003 Modification Agreement. Consequently, the November 5, 2003 Monetary Modification Agreement is valid and enforceable.

The Subsequent Monetary Modification described above properly identifies the underlying November 5, 2003 Monetary Modification Agreement. Based on the fact that this

20

Court has determined that the November 5, 2003 Monetary Modification Agreement is valid, by properly referencing a valid instrument, the Subsequent Monetary Modification increasing the principal balance secured to Ten Million Dollars ($10,000,000.00) is valid and enforceable.

Denmark executed a second instrument on November 5, 2003.  The November 5, 2003 Collateral Modification Agreement  provides the Defendants a lien on additional real property as specifically described in the instrument. Similar to the November 5, 2003 Monetary Modification Agreement, the November 5, 2003 Collateral Modification Agreement correctly identifies the April 1, 2003 Modification Agreement as the instrument which it seeks to modify. Given the correct reference, the Court finds that the November 5, 2003 Collateral Modification Agreement is also valid and enforceable.

The Subsequent Collateral Modifications described above modifies  the November 5, 2003 Collateral Modification Agreement, recorded in the Register of Deeds for Franklin County in Book 1373 at Page 826.  However, each of these Modifications reference the November 5, 2003 Monetary Modification Agreement recorded in Book 1373 at Page 822.  Though the date of November 5, 2003 is a correct reference; the reference to the page number is incorrect.  The proper reference should have been to the November 5, 2003 Collateral Modification Agreement located at Page 826.

In North Carolina, there are six requirements for a valid deed of trust including: (1) name of a competent grantor; (2) a grantee that is in legal existence at the time of execution; (3) language evidencing an intent to convey a legal interest in real property; (4) signature by the grantor or his agent; (5) delivery of the deed of trust to the grantee by the grantor or his agent; and (6) acceptance of the deed of trust by the grantee or his agent. *Williams v. N.C. Bd. of Education*, 284 N.C. 588, 201 S.E.2d 889 (1974), New *Home Builders Supply, Inc. v. Nations*,

259 N.C. 681, 131 S.E.2d (1963), *Elliott v. Goss,* 250 N.C. 185, 108 S.E.2d 475 (1959),

*Buchanan v. Clark,* 164 N.C. 56, 80 S.E. 24 (1919), *Sprinkle v. Wellborn,* 140 N.C. 163, 52

S.E.666 (1905), *Neal v. Nelson,* 117 N.C. 394, 23 S.E. 428 (1895).

Regardless of the underlying reference, the Subsequent Collateral Modifications all

provide the requisite information necessary for a valid deed of trust.  Each instrument sets forth

that Den-Mark Construction, Inc. or Denmark Construction, Inc. is the grantor; Wachovia is the

grantee; specific language granting Wachovia a lien with respect to specific real property;

appropriate signatures on behalf of Denmark; and delivery and acceptance evidenced by the

recording of the Subsequent Modifications.  In addition to containing all of the requirements of a

valid deed of trust, the Subsequent Collateral Modifications include language that "Grantor,

Trustee and Bank hereby modify Deed of Trust and any prior modifications thereof."  Such

language automatically incorporates the April 1, 2003 Modification Agreement properly

recorded in the Franklin County Registry in Book 1330 at Page 206.  Though sloppy, the

Subsequent Collateral Modifications include sufficient references to other recorded instruments

in order to identify the initial underlying obligation, the November 29, 2000 Note, and provide

the basic information required for a valid deed of trust.  Consequently, this Court finds that the

Subsequent Modifications are valid and enforceable.

Based on the foregoing, summary judgment is granted in favor of Wachovia in

connection with the loan documents at issue in Franklin County, North Carolina.  The Court

finds that Wachovia holds a secured lien up to the principal amount of Ten Million Dollars

($10,000,000.00), plus any interests or costs, as set forth in the Subsequent Monetary

Modification.  Furthermore, Wachovia holds a valid  security interest the real property described

in the April 1, 2003 Modification Agreement, the November 5, 2003 Collateral Modification

Agreement, and the Subsequent Modifications.

## III.    Vance County Properties

In their Motion, the Plaintiffs challenge the validity of two deeds of trust recorded in the Register of Deeds for Vance County, North Carolina: (1) a February 25, 2005 Modification of Deed of Trust (the "February 25 Modification") and (2) a May 24, 2006 Modification of Deed of Trust (the "May 24 Modification").  The Defendants state in their opposition that Wachovia no longer holds any collateral with respect to the February 25 Modification or the May 24 Modification.  Although Wachovia's Opposition sets forth its argument as to the validity of these instruments, based on the representations of counsel for both parties at the hearing that Wachovia no longer has any collateral in connection with these deed of trust modifications, there is no genuine issue of material fact and summary judgment is granted in favor of Wachovia.

<u>CONCLUSION</u>

Based on the foregoing, partial summary judgment is **GRANTED** in favor of Plaintiff in connection with the documents recorded in Alamance County that are the subject of the Motion and Opposition to the extent and with the limitations as set forth above. Summary Judgment is **GRANTED** in favor of Defendants with respect to the documents recorded in Franklin County, North Carolina as  discussed herein. Summary Judgment is  **GRANTED** in favor of  Defendants with respect to the documents recorded in Vance County, North Carolina as set forth herein.  A genuine  issue of material fact remains in connection with the Arbor Creek DOT  recorded in Alamance County, North Carolina to determine the extent to which the claim of Wachovia is secured.   The Court hereby directs the Clerk of the Court to schedule this adversary proceeding for trial on the genuine issues of material fact that remain.

**SO ORDERED.**

**END OF DOCUMENT**